NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-903

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 527253

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment that affirmed, on judicial review under G. L. c. 6, § 178M, and G. L. c. 30A, § 14, a decision of the Sex Offender Registry Board (board) classifying him as a level three sex offender.  The board's hearing examiner (examiner) did so based on Doe's 2019 conviction of indecent assault and battery after he attacked a woman in her car in the parking lot of a restaurant where they both worked.  The examiner further found that Doe had vaginally raped the victim with his penis during the attack.  On appeal, Doe argues that the examiner erred in applying the board's risk-elevating factor 16 (public place) to

him.[1]  Doe further argues that the examiner did not find enough risk elevating factors applicable, and did not sufficiently analyze those that were applicable, to warrant a level three classification.  We affirm the judgment.

Discussion.  1.  Standard of review.  Our review is limited:  "[w]e reverse or modify the board's decision only if we determine that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law."  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011) (Doe No. 10800).  We "give due weight to the experience, technical competence, and specialized knowledge of the [board], as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7).  See Doe No. 10800, supra at 632-633. The examiner has discretion "to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor."  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014) (Doe No. 68549).  Doe therefore "bears a heavy burden of establishing

---

[1] We refer to the classification factors by number, or name and number, it being understood that each of them appears in the corresponding subpart of 803 Code Mass. Regs. § 1.33 (2016).  In 2025, after the examiner's and Superior Court's decisions in this case, the regulations were amended, but neither party argues that the amendments have any bearing on the issues before us.  See 803 Code Mass. Regs. § 1.33 (2025).

that the [board]'s decision was incorrect" (citation omitted). Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 757 (2021).

2. Factor 16 (public place). Doe attacked his fellow restaurant employee in her car, in the restaurant's parking lot, sometime after 1 A.M., when the only other employee had already left. Finding that the restaurant parking lot was an area open to the public, the examiner applied factor 16, which provides, as to adult males such as Doe:

> "The commission of a sex offense or engaging in sexual misconduct in a place where detection is likely reflects the offender's lack of impulse control. The Board may apply less weight to factor 16 if there is evidence that the offender made a clear and concerted effort to conceal his offending behavior from others. For purposes of factor 16, a 'public place' includes any area maintained for or used by the public and any place that is open to the scrutiny of others or where there is no expectation of privacy."

Factor 16(a). Doe argues that it was error to apply factor 16, but we are unpersuaded.

Doe primarily argues that the evidence did not support a conclusion that the location of the offense was open to the scrutiny of others or was one where there was no expectation of privacy. This overlooks that factor 16 incorporates several separate examples of what constitutes a public place: "any area maintained for or used by the public and any place that is open to the scrutiny of others or where there is no expectation of

3

privacy" (emphases added).  Factor 16(a).  Here the examiner found that the restaurant parking lot was an area open to the public.  That was enough to apply factor 16.[2]  The examiner was not required to go on to determine also whether the area was one open to the scrutiny of others or where there was no expectation of privacy.

Doe next argues that there was evidence suggesting that he "did attempt to conceal his conduct from public view."  He asserts that, although he engaged in other sexually oriented and offensive conduct while still inside the restaurant, the conduct commenced "largely after other employees left for the night."  But a police report showed, and the examiner found, that much of the offensive conduct occurred either "[t]hroughout the evening" or at least before the other employee left sometime after 1 A.M.  Moreover, Doe committed the crime itself in a car in a parking lot open to the public.  Whatever weak inference of an attempt at concealment might be drawn in Doe's favor did not amount to evidence of "a clear and concerted effort to conceal his

---

[2] The examiner noted elsewhere in his decision that as Doe and the victim were leaving the parking lot in separate cars after the offense, "a police cruiser followed them briefly." Although the examiner did not expressly rely on this fact in applying factor 16, it illustrates how areas that are open to the public are ones where detection is more likely, even if most other persons are absent from the area at the moment of the offense.

offending behavior" that might warrant giving the factor "less weight."  Factor 16(a).

3.  Number and explanation of risk elevating factors.  Doe argues that because the examiner found only three risk-elevating factors to apply, and because the examiner applied them without extended analysis of their weight and in the face of two applicable risk-mitigating factors, the level three classification was unsupported by substantial evidence.  This argument is unavailing.

Under the board's classification system, examiners do not follow a strict numerical scoring approach.  As the board's regulations state, an offender's classification "is not based on a cumulative analysis of the applicable factors, but rather a qualitative analysis of the individual sex offender's history and personal circumstances."  Noe, Sex Offender Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 197 (2018), quoting preamble to 803 Code Mass. Regs. § 1.33 (2016).  The classification must reflect "a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex."  Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012).  The mere inapplicability of some of the board's high-risk or risk-elevating factors does not weigh in an offender's

favor.  See Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 788 (2006).

Here the examiner applied risk-elevating factors 7 (on the basis that the relationship between offender and victim was extrafamilial), 16 (public place), and 19 (on the basis that the level of physical contact included penile-vaginal penetration). We have already rejected Doe's challenge to the application of factor 16.  Doe criticizes the examiner for applying factor 7 without making an "assessment of the weight or importance of this factor in the determination" and without specifically stating that offending against a stranger presents a higher risk that offending against a known victim.  Doe also criticizes the examiner for applying factor 19 "with no evaluation of its role in the overall weighing of facts."  But Doe does not argue that either factor was misapplied.  Indeed, the victim was extrafamilial, and the examiner properly did not assign the increased weight that would be given to factor 7 for a stranger victim.  Likewise, the examiner properly applied factor 19 with "increased weight."  The weight given to these factors was not an abuse of discretion, nor would additional analysis have changed the result.

The examiner also applied risk mitigating factors 28 (supervision by probation or parole) and 33 (home situation and

6

support systems). Doe criticizes the examiner for applying these factors "with minimal analysis." Yet the examiner found factor 28 applicable and explained that he gave factor 33 only "moderate weight" because the support letters did not acknowledge or address Doe's sex offense. We see no error or abuse of discretion in the application of these mitigating factors.

To the extent that Doe asks us to determine some minimum number of high-risk or risk-elevating factors that must be found applicable in order to support a level three classification -- or some minimum amount by which the number of such applicable factors must exceed the number of applicable risk-mitigating factors -- he cites no authority allowing us to do so. The authorities cited above point in the opposite direction. And Doe makes no claim that the examiner's ultimate findings were unsupported by the requisite clear and convincing evidence. See Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 298 (2015).

Doe's argument comes down to an implicit assertion that, in order to arrive at a level three classification, the examiner must have given too much weight to the risk-elevating factors, or too little weight to the risk-mitigating factors, or both. But "how much weight to ascribe to each factor" is a matter

within the examiner's discretion.  Doe No. 68549, 470 Mass. at 109-110.  Doe has given us no sound basis on which to conclude that that discretion was abused.

As the board's brief acknowledges, the examiner's conclusions will "perhaps not [be] shared by every possible reviewer."  Yet "[o]ur review does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion as [the examiner], but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotations and citation omitted).  Doe No. 68549, 470 Mass. at 110.  That is not the case here.

Judgment affirmed.

By the Court (Massing,
Sacks & Allen, JJ.[3]),

Clerk

Entered: December 19, 2025.

---

[3] The panelists are listed in order of seniority.